UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JUANITA REYNOLDS,

        Plaintiff

v.                                       5:13-cv-1475

GALLAGHER BASSETT SERVICE, INC.,

        Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## <u>DECISION and ORDER</u>

      Plaintiff Juanita Reynolds commenced the instant action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that Defendant engaged in employment discrimination against her on the basis of her race and national origin.  Plaintiff also alleges a failure to accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.* Presently before the Court is Defendant's motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12.

## I.    FACTS[1]

      Plaintiff was at all times relevant to this action a Claim Representative or Senior Claim Representative for Defendant Gallagher Bassett Service, Inc.  <u>See</u> Complt., Dkt. No. 1, Exh. B, at 1.   In her *pro se* Complaint, filed on November 26, 2013, Plaintiff raises several allegations of discrimination against the Defendant.   <u>See</u> Complt. at §§

---

[1]The facts in this section are taken from Plaintiff's Complaint and the documents attached thereto.

6-7.  Plaintiff alleges discrimination on the basis of race and national origin.  Id. at § 6.

She alleges that Defendant discriminated against her by terminating her employment,

failing to promote her, providing unequal terms and conditions of employment, and

retaliating against her.  Id. at § 7.  She also contends that Defendant discriminated

against her by refusing to accommodate her disability.  Id.

Plaintiff's Complaint is stated on a form provided by the Court for *pro se* plaintiffs

raising claims under Title VII of the Civil Rights Act.  Plaintiff attaches additional

documents to her Complaint that evidence earlier filings with administrative agencies

regarding the discrimination she allegedly faced.   The Court, reading Plaintiff's *pro se*

Complaint generously, finds that Plaintiff attempts to raise three distinct causes of

action:  (1) discrimination on the basis of race and national origin; (2) failure to

accommodate Plaintiff's disability under the ADA; and (3) retaliation.

As to the facts alleged in her Complaint, Plaintiff contends that she was

subjected to "approximately 1 ½ years of ongoing activity" by her manager, Mary Beth

Fitzgerald, and Gail Posperiles, another employee.  Id. at § 7.  Plaintiff alleges the two

women "worked in concert to subject [her] to a hostile work environment until such time

as they could fabricate a reason to terminate my employment[.]" Id.  The two women

referred to Plaintiff, who in other documents included in the Complaint describes herself

as Hispanic or Latino, and of Native Hawaiian, Mexican and Spanish descent, alleges

as a "little Mexican jumping bean."  Id.  She also alleges that the two women ignored a

doctor's note limiting her work load because of her physical condition.  Id.  When

Plaintiff brought concerns about accommodations for her disability to management, she

was fired.  Id.  As a result of Defendant's treatment, Plaintiff alleges, she was wrongfully

terminated and has suffered a loss of pay and benefits, anxiety, embarrassment, humiliation, degradation, physical distress, harm to her reputation and good name, and pain.  Id.  Defendant's treatment also increased Plaintiff's disability symptoms, preventing her from returning to the workforce.  Id.

Plaintiff wrote to the Director of the Federal Equal Opportunity Commission in New York on September 25, 2011, complaining of her treatment by Defendant.  See Exh. A to Plaintiff's Complaint.  Plaintiff alleged that she had been the victim of racial discrimination when Defendant forced her to use her bilingual skills to assist coworkers without giving her any accommodation for the time she lost in providing this assistance. Id.  Plaintiff also complained that Defendant had refused to provide a reasonable accommodation for her disability as required by the ADA.  Further, Plaintiff asserted that Defendant had perpetuated and promoted a hostile work environment, retaliated against her by denying her annual salary increase when she "questioned documentation [sic] why changes had been made without notification," failed to compile a performance improvement development plan, and terminated her "without probable cause."  Id.

In her letter, Plaintiff reported that Defendant terminated her employment on January 11, 2011.  Id.  According to Plaintiff, Defendant had allegedly fired her because she had previously been warned about her performance and had failed to send a file that was due to a customer.  Id.  Plaintiff's letter, however, alleges a pattern of mistreatment on the part of her supervisors.  Id.  Gail Posperalis would frequently yell at Plaintiff without justification in front of her coworkers; Plaintiff never knew what would trigger "an abusive verbal remark."  Id.  Plaintiff also contends that her supervisors

expected her to handle a much larger work load than other workers.  Id.  They also expected her to help other workers with Spanish translations on their accounts, but did not provide Plaintiff any relief from her own assignments when she did this extra work.  Id.  Plaintiff attempted to resist requests from other workers to translate for them, but the workers simply took their requests to Posperalis, who would assign Plaintiff the task anyway.  Id.  Defendant "perceived" Plaintiff as uncooperative and unwilling to be a "team player" when she refused such requests.  Id.

On December 22, 2010, Plaintiff was called into a conference room by Suzanne Tompkins.  Id.  When Plaintiff asked Tompkins what was happening, Tompkins stated that they were "to discuss [Plaintiff's] termination plan, I mean performance plan."  Id.  While Plaintiff attempted to discuss her performance and ways she could improve, Mary Beth Fitzgerald, who was also present, ignored her and refused to participate in the conversation.  Id.  Plaintiff alleges that many of her difficulties at work were the result of her bringing concerns about work conditions and workplace policies to her supervisors.  Id.  Plaintiff was placed on probation and was to meet with supervisors weekly to discuss her performance.  Id.  No one ever gave her a copy of any document listing the areas where she needed to improve, and the next meeting she had with supervisors came when they terminated her.  Id.

Plaintiff also alleged in her letter that she had suffered a blood clot in her leg.  Id.  Plaintiff's doctor had determined that she could work from home as long as her leg remained elevated.  Id.  Plaintiff contends that Defendant did not take her condition or her doctor's note seriously.  Id.  Mary Beth Fitzgerald told plaintiff that Posperalis was the "resident expert" on her medical condition, since Posperalis' husband suffered from

a similar problem.  Id.  Posperalis discounted the advice of Plaintiff's physician and his

recommendation that she work from home.  Id.  Fitzgerald and Posperalis informed

them that she should continue to work, and do so at the office.  Id.  Faced with this

situation, Plaintiff's doctor recommended she take an anti-inflammatory and attempt to

work.  Id.  Plaintiff had an allergic reaction and was forced to take time out of work.  Id.

Plaintiff filed an "intake questionnaire" with the Equal Employment Opportunity

Commission on September 29, 2011.  See Exh. B to Compl.  In that questionnaire,

Plaintiff alleged that she had been the victim of discrimination based on race, disability,

and national origin, and had also been the victim of retaliation.  Id.  Plaintiff complained

that this discrimination was evidenced by her termination, and referred the EEOC to her

written statement for the factual basis of that claim.  Id.  Plaintiff also filled out a section

of the form related to disability discrimination.  Id.  She described her disability as

"sciatic and bilateral shoulder and hand pain" which was "constant," and alleged that

Defendant had refused to accommodate her by lightening her case load so that she did

not have to work more than forty hours per week and on Saturdays.  Id.  Plaintiff

affirmed that she wanted to file a charge of discrimination against her former employer.

Id.

Plaintiff dual-filed a charge of discrimination with the New York State Division of

Human Rights and the EEOC on October 5, 2011.  See Exh. C to Complt.  The form

she filled out contained claims for discrimination based on national origin and

retaliation, but did not check the box available for disability discrimination.  Id.  In her

written charge, Plaintiff claimed that Posperalis would make "disparaging" comments

about her, referring to her "as the 'little Mexican jumping bean,'" and would belittle and

disparage her in front of other workers.  Id.  Plaintiff also complained that she was given

work interpreting for others in the workplace, causing her to fall behind on her own

work.  Id.  Plaintiff complained that Defendant refused her requests to have a reduced

case load in light of these translating responsibilities.  Id.  Plaintiff further alleged that

she was "willfully and unlawfully discriminated against based on [her] National Origin,

Mexican[,] and retaliated against for requesting assistance when [her] terms and

conditions" of employment changed.  Id.  The EEOC acknowledged Plaintiff's charge on

October 24, 2011, indicating that she brought charges pursuant to Title VII of the Civil

Rights Act of 1964.  Id.  No mention was made of the ADA.  Id.  The EEOC investigated

Plaintiff's claim and on August 30, 2013 issued a right-to-sue letter.  See Exh. C to

Plaintiff's Complaint.

Plaintiff filed her Complaint on November 26, 2013.  Defendant thereafter filed

the instant motion to dismiss.  The parties have briefed the issues.

## II.    LEGAL STANDARD

Defendant has filed a motion to dismiss Plaintiff's claims pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Defendant argues that Plaintiff has not stated a claim

upon which relief could be granted, even if all factual allegations in the complaint were

proved true.  In addressing such motions, the Court must accept "all factual allegations

in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."

Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to

legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). Here, Plaintiff is proceeding *pro se*. "[T]he pleadings of a *pro se* plaintiff must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## III. ANALYSIS

Defendant seeks dismissal on several grounds. The Court will address each in turn.

### A. Exhaustion of Administrative Remedies

Defendant first argues that Plaintiff's claims for failure to promote and failure to provide reasonable accommodations under the ADA should be barred because Plaintiff did not raise these issues in her complaint to the EEOC and such claims are therefore barred for failure to exhaust her administrative remedies.

Courts are clear that "[a] Title VII claimant may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter." Shah v. New York State Dep't of Civ. Serv., 168 F.3d 610, 613 (2d Cir. 1999). As a general rule, federal courts lack "jurisdiction to hear claims not alleged in an employee's EEOC charge." Id. at 613-614. The exhaustion requirement is central to Title VII's purposes, "and is designed 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" Id. at 614 (quoting Stewart v. United States Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985)). If "a

plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." Butts v. New York Dept. of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993); see also Zerilli v. Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (same statute of limitations rules apply in ADA claims).

Defendant argues that Plaintiff's claims of failure to promote and her ADA claims were not included in the charge filed with the EEOC. "In an action in which this procedural requirement" of an administrative complaint "has been satisfied, the plaintiff may raise any claim that is 'reasonably related' to those asserted in the EEOC filing." Ximines v. George Wingate High Sch., 516 F.3d 156, 158 (2d Cir. 2009). Courts emphasize that "'[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge that was made.'" Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)). The Court is to "'focus . . . on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" Id. (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)). The court must determine "whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases." Id. (internal quotations and citations omitted). This "reasonably related" requirement permits a more generous pleading standard "based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering." Id. (internal quotations omitted).

8

Plaintiff clearly failed to exhaust her administrative remedies on her failure-to-promote claim and is barred from raising that issue in this case. No mention was made in any of the documents that Plaintiff provided to the EEOC about any failure-to-promote. Plaintiff therefore failed to provide the EEOC with an opportunity to investigate and evaluate her claims on this issue, and the EEOC was unable to evaluate the basis for that claim. As such, any claims related to Defendant's alleged failure to promote the plaintiff are barred from the case and the motion to dismiss is granted in this respect.

Plaintiff's ADA claim creates a more difficult question for the Court. Plaintiff created a contradictory record before the EEOC with respect to her alleged claim for failure to accommodate under the ADA. Plaintiff wrote a letter to the EEOC on September 25, 2011. See Exh. A to Plaintiff's Complaint. That letter alleges discrimination on a variety of bases, including "[f]ailure to provide reasonable accommodations under [the] ADA." Id. The letter also describes Plaintiff's allegedly unsuccessful attempts to receive an accommodation, such as working at home, for a blood clot in her leg. Id. Plaintiff also filed an "intake questionnaire" with the Equal Employment Opportunity Commission on September 29, 2011. See Exh. B to Compl. In that questionnaire, Plaintiff alleged that she had been the victim of discrimination based on race, disability, and national origin, and had also been the victim of retaliation. Id. Plaintiff complained that this discrimination was evidenced by her termination, and referred the EEOC to her written statement for the factual basis of that claim. Id. Plaintiff also filled out a section of the form related to disability discrimination. Id. She described her disability and alleged that Defendant had refused to accommodate her by

lightening her case load so that she did not have to work more than forty hours per week and on Saturdays.  Id.  Plaintiff affirmed that she wanted to file a charge of discrimination against her former employer.  Id.  Plaintiff checked a box on the intake questionnaire that stated "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above."  Id.[2]

In the end, Plaintiff filed a separate formal charge.  She dual-filed a charge of discrimination with the New York State Division of Human Rights and the EEOC on October 5, 2011.  See Exh. C to Complt.  The form she filled out contained claims for discrimination based on national origin and retaliation, but did not check the box available for disability discrimination.  Id.  In her written charge, Plaintiff claimed that Posperalis would make "disparaging" comments about her, referring to her "as the 'little Mexican jumping bean,'" and would belittle and disparage her in front of other workers.  Id.  Plaintiff also complained that she was given work interpreting for others in the workplace, causing her to fall behind on her own work.  Id.  Plaintiff complained that Defendant refused her requests to have a reduced case load in light of these translating responsibilities.  Id.  Plaintiff further alleged that she was "willfully and unlawfully discriminated against based on [her] Nation Origin, Mexican[,] and retaliated against for requesting assistance when [her] terms and conditions" of employment changed.  Id.  Nothing in the formal charge contains any reference to allegations of discrimination on

_____

[2]The box goes on to state that "I understand the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination."

the basis of disability.

The EEOC acknowledged Plaintiff's charge on October 24, 2011, indicating that Plaintiff brought charges pursuant to Title VII of the Civil Rights Act of 1964. Id. No mention was made of the ADA. Id. Plaintiff received a notice of dismissal and right to sue letter from the EEOC on August 23, 2013. See Exh. C. The letter stated that Plaintiff "alleged that you were discharged because of your national origin, Mexican and in retaliation for having complained about harassment in willful violation of Title VII of the Civil Rights Act of 1964, as amended." Id. Again, the letter made no mention of any ADA claims that had been investigated by the agency.

There can be no doubt that Plaintiff alleged that Defendant failed to accommodate her disability in a letter and intake questionnaire she provided to the EEOC. Plaintiff did not, however, repeat these allegations in the EEOC charge itself, but alleged only discriminatory conduct on the basis of race and national origin and retaliation. The Court finds that, since that document was the last document filed by the Plaintiff and represented a formal charge, the charge document is the means by which Plaintiff exhausted her administrative remedies. That document contains no mention of the ADA, and the Court concludes that Plaintiff did not exhaust her administrative remedies with reference to that claim. Nothing in the formal charge contains any mention of disability discrimination. None of the factual allegations in that charge would have led an investigator to search for evidence of such discrimination, whether in the form of failure-to-accommodate or retaliation for engaging in ADA-related activity. Such claims are not reasonably related to the Title VII violations alleged in the formal complaint. The Defendant's motion must be granted in this respect. The only claims

properly before this Court are Plaintiff's Title VII discrimination claims and her retaliation

claims. Plaintiff clearly exhausted her administrative remedies on those claims.[3]

## B.  Facts in the Complaint Allegedly Time-Barred

Next, Defendant asserts that some of the actions alleged in the complaint

occurred more than 300 days before Plaintiff filed her administrative complaint, and

thus claims related to those actions are time-barred.  Defendant argues that Plaintiff

has asserted a variety of claims of discriminatory conduct, all of which occurred more

than 300 days before she filed her complaint with the EEOC.  Because none of the acts

complained of are reasonably related to Plaintiff's firing or the adverse employment

actions that led to that firing, Defendant insists that any claims based on that conduct

---

[3]The Court notes that the United States Supreme Court has determined that "[i]n addition to the information required by the regulations, i.e., an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute the employer and employee." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008).  A document that "an objective observer" could construe as one where "the filer requests the agency to activate its machinery and remedial process" qualifies as a charge under this standard. Id.  Moreover, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." Id. at 406.  The Southern District of New York court in Davis v. Columbia University, No. 09cv9581, 2010 U.S. Dist. LEXIS 51802 (S.D.N.Y. May 26, 2010), addressed a similar issue.  In that case, Plaintiff filed a formal charge of discrimination more than 300 days after the date of discrimination, meaning that he was likely time-barred from raising his claim. Id. at *7.  Plaintiff had completed intake questionnaires and with the first of those questionnaires provided a letter that laid out "specific factual details" and requested specific relief. Id. at *9.  The court interpreted these documents as "just sufficient to objectively demonstrate a request for the EEOC to act on his discrimination claim." Id.  The Court finds these cases easily distinguishable.  In both cases, the question was whether the plaintiff had made a formal, timely charge.  Here, there is no question that Plaintiff did so.  Plaintiff limited the charges she specifically asked the EEOC to investigate, and she exhausted her administrative remedies only on those charges.

are barred by the statute of limitations.

In general, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1)." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). The time for filing charges under that statute is 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Defendant does not dispute that Plaintiff filed her EEOC claim within 300 days of her January 11, 2011 firing, but contends that Plaintiff raises other claims unrelated to to this firing barred by this 300-day limit. Not every act giving rise to a discrimination claim, however, need have occurred within the 300-day time limit proscribed by the statute: "'[u]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" Patterson, 375 F.3d at 220 (quoting Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993). To take advantage of the continuing violations exception, "a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson, 375 F.3d at 220. A plaintiff may not recover, however, "'for *discrete* acts of discrimination or retaliation that occur outside the statutory time period,' even if other acts of discrimination occurred within the statutory time period." Id. (quoting AMTRAK v. Morgan, 536 U.S. 101, 105 (2002) (emphasis added in original)).

Allegations of discriminatory conduct need not by themselves provide a basis for recovery to be relevant to a cause of action. If a plaintiff can show "at least 'one alleged

13

adverse employment action . . . occurred within the applicable filing period[,] . . . evidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [that] timely claim.'" Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 150 (2d Cir. 2012) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176 (2d Cir. 2005)). Courts have found that the purpose of admitting evidence of violations outside the limitations period "'may be considered to assess liability on the timely alleged act.'" Id. 685 F.3d at 150. Of course, the court "retains discretion to determine whether evidence predating the onset of the statute of limitations period should be admitted under any applicable rule of evidence." Id. at 150 n.9.

Defendant's argument here is that Plaintiff's claims based on conduct that occurred before the 300-day limitations period should be dismissed. To the extent that any of those claims could be considered discrete claims related to discrete acts, the Court would agree and dismiss those claims. Thus, Plaintiff could not recover for an adverse employment action, such as failure to promote, that occurred outside the limitations period, or for a hostile racial environment that occurred–but stopped–more than 300 before the EEOC filing. Defendant alleges that Plaintiff should not be permitted to recover for stereotypical language Defendant's agents used to describe her, for increasing her workload unreasonably, for forcing her to translate documents to Spanish without reducing her caseload, for poor performance reviews, for Defendant's failure to reimburse her for educational expenses, and for failing to accommodate her blood clot.[4]

_____

[4]This issue of the blood clot is related to the ADA claim addressed *supra*.

The Court will deny the motion on this basis. Defendant miscasts most of these incidents as "claims," when they are simply examples of alleged pattern of discriminatory treatment that eventually culminated in discriminatory firing and retaliation. With the exception of Plaintiff's failure-to-accommodate claim and any claim she might make for failure to reimburse her for educational expenses, none of these incidents give rise to discrete claims, and the Court finds no grounds to dismiss them. The Court also reads the Complaint and EEOC filings to allege that Plaintiff's firing was retaliation for complaining about her treatment. Those allegations are therefore all related to the discrete act of termination, which occurred within the 300-day period, as Defendant acknowledges. Thus, Plaintiff has alleged "one act of discrimination in furtherance of an ongoing policy" of discrimination that "occurred within the limitations period." <u>Patterson</u>, 375 F.3d at 220. Claims of earlier discriminatory attitudes and conduct do not give rise to separate and discrete claims, and may be considered by the Court in considering liability on the termination that is the real subject of this lawsuit. Making all inferences in Plaintiff's favor, and giving her pleadings a reading that provides them with the strongest arguments they suggest, the Court finds that Plaintiff's claims for unlawful termination and retaliation are not barred by the limitations period. Discriminatory conduct before that period may, at this point, be used as evidence to support Plaintiff's claims about the animus that led to her termination.

### C. Discrimination on the Basis of Race

Defendant next argues that Plaintiff has failed to state a claim for discrimination on the basis of race. According to the Defendant, Plaintiff has failed to allege any facts from which the Court could draw a plausible inference of discrimination. Plaintiff's

15

claims of discrimination amount to nothing more than isolated remarks made long before any termination occurred, and her allegations are nothing more than conclusory. Indeed, Defendant contends, Plaintiff admits in her complaint that she was terminated because she failed to assist clients in a timely fashion.  Such an admission demonstrates that Defendant had a legitimate business reason for firing Plaintiff. Defendant therefore insists that Plaintiff's race discrimination claims should be dismissed.

Plaintiff's claims of race discrimination are brought pursuant to Title VII of the Civil Rights Act of 1964.  That provision makes it "an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect ot his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  The Supreme Court has "'established an allocation of the burden of production and an order for the presentation of proof'" in such cases. Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012) (quoting st. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)).  "At the first stage," of this burden-shifting framework, "the plaintiff bears the burden of establishing a 'prima facie' case."  Id. (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  If the plaintiff meets the "'minimal'" requirements of this burden, the plaintiff has "[created] a presumption that the employer unlawfully discriminated against the employee.'"  Id. (quoting Burdine, 450 U.S. at 254).  The burden then shifts to the defendant, who must "'[produce] evidence that the adverse employment actions were taken 'for a legitimate nondiscriminatory reason.'"  Id. at 128-29 (quoting Hicks, 509 U.S.

16

at 506-507).  If the defendant offers such an explanation, the burden shifts back to the plaintiff, who must "'demonstrate that the proffered reason was not the true reason for the employment decision.'" Id. (quoting Brudine, 450 U.S. at 256).

The Court reads the Plaintiff's *pro-se* Complaint to allege race discrimination on two bases: first, that Defendant made an adverse employment decision against Plaintiff on the basis of her race and national origin and second, that Defendant created a hostile work environment.  The Court will address the motion as it relates to each of these claims in turn.

Defendant argues that Plaintiff has failed to allege a prima facie case of race discrimination.  To make out a prima facie case for Title VII discrimination, "a plaintiff must show that: (1) [s]he is a member of a protected class; (2) [s]he performed the job satisfactorily; (3) an adverse employment action took place; and (4) the action occurred under circumstances giving rise to an inference of discrimination."  Jackson v. New York City Transit, 348 Fed. Appx. 666, 668 (2d Cir. 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  Courts in the Second Circuit "have characterized the evidence necessary to satisfy this initial burden as 'minimal' and '*de minimis*'" Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (quoting Byrnie v. Town of Cromwell, 243 F.3d 93, 101 (2d Cir. 2001)).  Defendant does not dispute that Plaintiff has alleged the first three elements, but argues that Plaintiff's allegations cannot plausibly support an inference of discrimination.

The Court disagrees with the Defendant.  Reading Plaintiff's *pro-se* complaint generously and making all inferences in favor of the non-moving party, the Court finds that Plaintiff has alleged that Defendant treated Plaintiff differently because of her race

and national origin.  As explained above, Plaintiff alleges that Defendant gave Plaintiff different job assignments and had different expectations for her, and that these different assignments and expectations arose because of her race and national origin.  Such assignments were accompanied by statements that could be considered to contain racial animus, such as references to Plaintiff as "a Mexican jumping bean."  Plaintiff contends that such discriminatory conduct continued throughout her employment. According to Plaintiff, Defendant then used her alleged failure to meet these race-based particular expectations as a pretext to fire her.

Defendant cites to <u>Patane v. Clark</u>, 508 F.3d 106 (2d Cir. 2007), for the proposition that Plaintiff's allegations fail to meet the pleading standard for Title VII cases.  In <u>Patane</u>, the Court found plaintiff's complaint faulty because the document did "not allege that [plaintiff] was subject to any specific gender-based adverse employment action" by defendants and failed to "set forth any factual circumstances from which a" discriminatory motivation "might be inferred."  <u>Patane</u>, 508 F.3d at 112.  The situation is different here, as explained above.   Plaintiff has met her minimal burden, particularly at this stage, to allege that she was fired under circumstances that give rise to an inference of discrimination.  Indeed, in <u>Patane</u> the plaintiff's case failed in part because the complaint did not "allege that [defendants] made any remarks that could be viewed as reflecting discriminatory animus."  <u>Id.</u>  Here, Plaintiff alleges just those types of statements, and the Court must find Plaintiff's allegations sufficient to state a claim for race and national-origin discrimination.  The motion will be denied on this basis.

Defendant also argues that Plaintiff has not properly alleged that Defendant created a hostile work environment.  "'Title VII affords employees the right to work in an

18

environment free from discriminatory intimidation, ridicule, and insult.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).  A hostile work environment claim requires a plaintiff to show "'(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'"  Id. (quoting Van Zant v. Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)).  Defendant here cites "hostile environment" cases to focus on the first element and argue for dismissal.  Those cases establish that "Title VII does not establish a 'general civility code' for the American workplace" and that "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."  Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2000) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).  Defendant argues that Plaintiff has alleged only isolated and "facially neutral" comments related to race (such as referring to Plaintiff as "a Mexican jumping bean") and has not provided a plausible allegation of severe or pervasive hostile treatment.

The Court disagrees.  Plaintiff is proceeding *pro se*.  Reading her complaint generously, Plaintiff alleges that she was a victim of an eighteen-month pattern of discriminatory language and conduct that included offensive language and disparate treatment on the basis of race and which altered her terms and conditions of employment.  At this stage in the litigation, such allegations are sufficient to state a claim.  The motion will be denied on this basis.

### D. Failure to Accommodate

Defendant next contends that Plaintiff has failed to state a claim for failure-to-accommodate Plaintiff's disability under the Americans with Disabilities Act ("ADA"). As explained above, the Court has determined that Plaintiff's ADA claim should be dismissed for failure to exhaust administrative remedies.

### E. Retaliation

Finally, Defendant asserts that Plaintiff has failed to state a claim for retaliation. Defendant asserts that Plaintiff's allegations do not establish that she engaged in any protected activity, and that she therefore cannot make out a retaliation claim.

Plaintiff's claim here is for retaliation. Plaintiff has raised claims under both Title VII and the ADA. Courts evaluate retaliation claims using the same framework, whether the claims are brought under Title VII or the ADA. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999). "To make out a *prima facie case* for retaliation, a plaintiff must demonstrate that '(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action.'" Kelly v. Howard I. Shapiro & Assocs. Consulting Egineers, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)). Protected activity occurs whether or not the plaintiff actually complains about illegal conduct "so long as he can establish that he possessed a 'good faith, reasonable belief that the underlying challenged actions of the employer violated that law.'" Sarno, 183 F.3d at 159 (quoting Quinn v. Green Tree Credit Corp.,

159 F.3d 759, 769 (2d Cir. 1998)).  Protected activity can include the "filing of formal charges of discrimination," but such activity can also include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."  Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990).

Since the Court has found that Plaintiff failed to exhaust her administrative remedies with respect to her ADA claims, the only question here is whether Plaintiff has alleged retaliation for engaging in protected activity in the Title VII context.  Plaintiff alleges in her Complaint that "I was encouraged to advise mgmt of concerns and request assistance and also to advise mgt of any recommendations we may have for improvement."  Complt. at 4.  Plaintiff alleges that she did so, and that action "back fired."  Id.  Defendant assigned Plaintiff more work and gave her more cases from her coworkers to resolve.  Id.  Defendant reads these allegations to be complaints only about Plaintiff's work assignments.  As such, Defendant argues, Plaintiff has not alleged retaliation for engaging in a protected activity.

Though the above-cited allegations might be generously read to find an ADA retaliation claim, nothing here indicates that Plaintiff complained above racial or national-origin-based discrimination, the only claims properly before the Court.  Plaintiff has not alleged that she engaged in protected activity.  As such, the retaliation claim must be dismissed.  Because Plaintiff is proceeding *pro se*, however, and because Plaintiff exhausted her administrative remedies in relation to Title VII retaliation, the Court will not dismiss the claim with prejudice.  Plaintiff could conceivably allege facts

supporting a Title VII retaliation claim.  Should the Plaintiff possess facts which demonstrate that she complained to supervisors about racial discrimination and suffered an adverse employment action as a result of that complaint, Plaintiff may file an amended complaint within twenty-one days of the date of this order that contains such allegations.  The amended complaint should not attempt to revive the ADA claims dismissed by this order but should simply provide a clearer factual basis for the alleged Title VII retaliation.

## IV.    CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss Plaintiff's Complaint is GRANTED in part and DENIED in part.  The motion is granted with prejudice with respect to Plaintiff's claims for failure-to-promote and ADA discrimination, including ADA-related retaliation.  The motion is granted without prejudice with respect to Plaintiff's claim for Title VII retaliation.  If Plaintiff chooses to pursue that claim, she shall file an amended complaint within 21 days of the date of this order.  The motion is denied in all other respects.

IT IS SO ORDERED

Dated: September 24 , 2014


Thomas J. McAvoy
Senior, U.S. District Judge